**GAINES et al. v. ORR et al.**

No. 35940.

Supreme Court of Oklahoma.

May 18, 1954.

Mont R. Powell, William R. Saied, Sam Hill, Oklahoma City, for petitioners.

George E. Fisher, Oklahoma City, Q. D. Gibbs, Okmulgee, Mac Q. Williamson, Atty. Gen., for respondents.

WILLIAMS, Justice.

This is a proceeding brought by N. J. Gaines, Sr., and his insurance carrier, State Insurance Fund, to review an award of the State Industrial Commission awarding compensation to respondent K. S. Orr.

On December 7, 1951, respondent filed his claim for compensation in which he stated that on October 10, 1951, while in the employ of petitioner. Gaines he sustained an accidental injury to his left eye resulting in the total loss of the use of the eye. The injury occurred when he bumped his head above the eye against an overhanging iron pipe while engaged in moving a scaffold.

The trial commissioner at the close of the evidence in substance found that on October 10, 1951, respondent, while in the employ of petitioner Gaines, sustained an accidental personal injury arising out of and in the course of his employment consisting of an injury to his left eye; that as a result thereof he was temporarily totally disabled from October 29, 1951, to August 27, 1952, and that he was entitled to compensation for such disability in the sum of $1,062.50; and further found that as a result of said injury

he has sustained industrial loss of vision of the left eye and that he was entitled to compensation for such injury in the sum of $2,500 and entered an award against petitioners for temporary and permanent disability accordingly.

The award was sustained on appeal to the Commission en banc.

Petitioners bring the case here to review this award and rely for its vacation on three assignments. In their first assignment petitioners contend that the evidence is insufficient to sustain the finding of the Commission that respondent sustained an accidental injury to his eye while employed by Mr. Gaines.

Respondent testified that he was a carpenter by trade and that on October 10, 1951, while engaged in placing windows in a brooder house belonging to Mr. Gaines and while engaged in moving a scaffold he struck his head against an iron pipe which was hanging below the rafters in the building causing an injury to his left eye. He kept working until October 29, 1951, at which time he ceased work but during all this time his eye gave him trouble; that he saw and was treated by several physicians and one of these physicians operated his eye. The eye temporarily improved after the operation but thereafter it gradually became worse and he now has very little vision in his left eye.

While there is some negative evidence by co-employees to the effect that they never knew or heard of respondent having sustained an injury to his eye while working for Mr. Gaines, we think the evidence is sufficient to sustain this finding.

Petitioners in their second assignment contend that there is no medical evidence to support the finding of the Commission that respondent as a result of his injury suffered a total loss of use of his left eye.

The medical evidence consists of the evidence of several physicians. One of these physicians who had examined respondent's eye filed a written report as to his findings and conclusions in which he states he obtained the following history from respondent: On October 10, 1951, while working for N. J. Gaines, Sr., doing carpenter work

he struck the left temporal region of his head against a gas pipe and there was a gradual loss of vision up until November 28th and 29th, when there was a complete loss of vision; that an operation was performed on the eye by Dr. L. for detachment of the retina, there had been some improvement since the operation but it was merely temporary; he had had no trouble before the accident. His examination disclosed the operation resulted in a partial reattachment of the retina which may be permanent. However, the chances for it to come detached again is always present and is liable to cause a complete loss of vision in his left eye. There is at present 50 per cent loss of vision which in his opinion is due to the accident and will be permanent. The above physician is the only physician who testified that the loss of vision sustained by respondent to his left eye was caused by the accident complained of. It is argued by petitioners that his evidence is insufficient to sustain an award in excess of 50 per cent loss of vision of the eye. This contention might be correct if the evidence of this physician had been the only medical evidence offered in the case. However the physician who operated the eye testified in substance that he first saw and examined respondent on November 27, 1951. His examination disclosed that respondent had a retinal detachment in his left eye and there was a tear in his retina. An operation was performed to seal the tear. After the operation there was a temporary improvement in his eye. However, the improvement was merely temporary and upon a further examination made in August 1952, it was discovered that the detachment settled back all except at one little place. He did not see respondent again until December 6, 1952, at which time the detachment had become quite extensive and respondent then had an 80 per cent loss of vision of the eye which amounts to industrial blindness in the eye; that this condition will remain permanent unless vision can be restored by another operation. The operation, if performed, would constitute a major operation and he would not guarantee that it would be successful. The chances are no better than 50-50 that another operation would benefit the eye.

966

Respondent declined to submit to another operation and stated he did not think he could stand another operation and that he would not take a chance on such operation when in all probability he would receive no benefit therefrom and would still be totally blind in that eye.

We then have the testimony of one physician testifying that after the operation the retina of respondent was temporarily reattached and he then had a 50 per cent loss of vision of his left eye caused by the accident and further testimony that if the retina again became detached, which it probably would, he would then have a total loss of the use of the eye as a result of the accident. Another physician, and the physician who operated the eye, testified that the retina of the eye after the first operation again became detached and respondent then had for all practical purposes total loss of the use of the eye but expressed no opinion as to the cause thereof.

While the evidence of either one of these physicians standing alone would be insufficient to sustain the award of·the Commission for total loss of use of the eye, considering their evidence together, which the Commission had a right to do and evidently did, it is sufficient to sustain the award.

We have so held under similar state of facts in Sepecial Indemnity Fund v. Horne, 208 Okl. 218, 254 P.2d 988.

It is further contended by petitioners the evidence is insufficient to support the finding of the Commission that respondent was temporarily totally disabled from October 29, 1951, to August 27, 1952. We do not agree. Respondent testified that after his injury he kept working until October 29, 1951, at which time he ceased working but his eye kept bothering him during all that time and it gradually grew worse until he finally became practically blind in that eye. The physician who operated on the eye discharged him on July 27, 1952, as being able to do light work. We think this evidence sufficient to sustain the finding and award as to temporary total disability, and the evidence above detailed is sufficient to sustain the finding that

respondent as a result of the accidental injury occurring on October 10, 1951, has sustained a total loss of the use of the eye.

Award sustained.